133863 United States of America v. Jack Coppenger Jr. Oral argument not to exceed 15 minutes per side. Mr. Smith for the defendant appellant. Evan Smith here for Jack Coppenger and I'd like to reserve five minutes please. May it please the court. This case turns on a basic principle. A defendant has the right to know what a judge is going to use against them at sentencing. In this case that didn't happen. Jack Coppenger was sentenced based on extra record facts that we still do not have access to. The problem is that that made it impossible to have the type of pointed adversarial proceeding that a sentencing hearing needs to be. Now to be clear Mr. Coppenger is not arguing that he is entitled to notice just because a sentencing judge decided to vary upwards beyond the guidelines. How do we deal with the fact that you have a lot of cases with you know conspiracy cases with a lot of defendants and you have the same judge sentencing everybody and this judge was forthright about what was going on but doesn't in one sense doesn't this happen a lot that the judge is aware of all these things because the judge presumably has read all these PSRs, some confidential information, some not. How are judges supposed to do this? Well I think one thing that's particular about this case is that you've got, as is true in a lot of conspiracies, a complex set of facts. But the procedure here was very simple. You had an information, there wasn't even an indictment so there's no grand jury record. There wasn't a trial, you had a guilty plea. And so here the record is very thin. Now I understand that the judge had other co-defendants before him. The problem though is that if the judge wants to, you know, and I understand what you're saying that there are times when judges are looking at lots of these. The judge just needs to be more explicit before the hearing and say, you know, I'm considering these other PSRs. This is something that maybe defense counsel and the government should be aware of before the hearing. What are you suggesting if we, or sympathetic to your argument, happen here if this case was sent back? I simply think there should be a re-sentencing hearing. But what happens at the, what's the purpose of that? What happens at the re-sentencing hearing? You're not saying that you get the PSRs are you? On these 33 other individuals? Well, I think that at one level, you know, a trial counsel on re-sentencing would be able to see some of the facts that were relevant. And at that point, if there are questions about are these facts accurate or just what, then at that point they could subpoena these witnesses. There could be a question about now exactly what was going on with the facts here. You know, the problem with the PSRs is that you've got untested facts in there. And so there should be an opportunity to test the facts. Now exactly what will happen at that hearing? Wait a minute. I'm really troubled by the idea that you get the PSRs and then you have a hearing to test the facts in 33 other PSRs involving other people in documents that are otherwise very confidential. I'm more sympathetic to the idea that now you know the conclusions that the judge says he's drawn from those PSRs. So now you get to put on your own evidence, whatever that may be. Yeah, to be clear, I'm not saying that necessarily the PSRs now have to be made part of the record. What's important are the relevant facts that came from the PSRs. And as long as those relevant facts can be tested, then we don't actually need to get into confidential documents. Now, what the government says is that your guy is the one that brought all of these straw buyers into this conspiracy and got them all in trouble to begin with, and he already knows what their situations are. So what do you say in response to that? Well, first I say that there's very little in the record to support that. Now we can suppose that Mr. Cominter knew some aspects about these people's lives. But there's nothing in the record that suggests that he knew all these facts. Is he the one that brought all of the straw buyers in, or were there other people that were responsible for other straw buyers? I'm not familiar with that level because it's not in the record. What I do know is that he and the mortgage loan officers were all involved in recruiting people. I want you to just assume for a second that Coppinger located some of these straw buyers. But I want you to also assume, and we'll find out from the government if they know, that the mortgage loan officers brought in some of the other straw buyers. So wouldn't your argument be, how can your guy be held to have certain knowledge about the situation of these other straw buyers if, one, he didn't know them, and two, he didn't bring them in? Yeah, that could be the case. We don't know. It's not in the record. And that's precisely the problem when you have these types of extra record facts being introduced to support a variance. It might not be shown by the record, but you represent Coppinger, right? What does Coppinger say? What does he tell you about whether or not he, in fact, is responsible for all the straw buyers? I've not had that conversation with him. He's in prison in Ohio. We haven't been able to meet in person. Well, was the theory that he recruited everybody, or he and these mortgage loan officers kind of worked it up together, and then they got the straw? From my understanding from the plea agreement, the mortgage loan officers were recruiting some of the people. Yeah, but did he recruit them, too? Or was it his whole scheme? Usually there's kind of a top person who says, let's do this. I'm not 100% on this, but my understanding is that he recruited the mortgage loan officers, but then there were maybe some straw buyers that he wasn't as involved with. Right. But, you know, if he's the top person, he's kind of responsible for everybody. It's like the top of the Christmas tree. Everybody blows, goes back to the top. Yeah, no, he was certainly the leader of this conspiracy. There's no doubt about that. He got that guidelines enhancement, and part of the problem here is that there is so much overlap between what it means to lead a conspiracy and the impacts that are being taken into account through the variance. Do you agree plain error applies here? I don't agree with that, and I think that one reason plain error does... Wasn't the Bostic question asked? It was. Okay, keep going. One reason is that the reason we care about plain error is to make sure that issues are raised before a sentencing judge. In this case, the sentencing judge did consider this issue about whether the straw buyer should be considered victims. The sentencing judge acknowledged that they legally should not be, but then the judge went forward with this. I thought your argument had two components to it, the victim-nonvictim point, but then also using all this other information to which your client and you did not have access to. As to that point, it seems to me the lawyer was on notice, and I don't understand why the Bostic question shouldn't have been answered given the briefs on appeal. Yes, we do have a problem. The issue with the extra record facts, that was not dealt with at the hearing as it should have been. I submit that that's where we get into ineffective assistance of counsel, and this is one of the rare situations where it might make sense to deal with that on direct appeal. Or to say it's plain error. In other words, if you're saying ineffective assistance applies, then you must be conceding that plain error applies to that issue. I'm not conceding. I'm arguing in the alternate. Well, you're making an alternative argument you didn't make before today. This isn't an IAC case yet. I argued IAC in the briefs. But, I mean, I don't understand your non-plain error argument as to the use of this information. Because the Bostic question is asked, and no response is made on that. So doesn't plain error apply to that issue? There are sort of two interrelated issues, and it's hard to separate them. One is this creating co-conspiracy. One answer is they're so related that if you object to one, you object to all. Let's say I don't agree with that. Then isn't it plain error as to the second one? I think that... The use of the information to which you did not have access. I think the plain error could apply to the second one. I think then you get it. I think that... Well, you might satisfy... You're saying it would be satisfied. Exactly. And I think that also we get into ineffective assistance, which... It's not satisfying. I don't want to go there, but I think it is an issue. I hear you. Okay. I got it. Okay. So I think that the situation here really is contemplated by the Supreme Court's decision in irisary, and this is one of the rare cases that fits into the safety valve. The Supreme Court, they say, we're not going to categorically extend a notice requirement to variances. We're not going to read 32H that way. One of the reasons that they're not going to do that are the protections of 32I. The protections that a counsel be able to speak to the court and address the issues that are going to come up at sentencing. To not have a categorical notice requirement, that has to be robustly read. And so the Supreme Court says judges in all cases should make sure that the information provided to the parties has given them an adequate opportunity to confront and debate the relevant issues. That didn't happen here. And also, this case has a long chain of precedent saying that sentences should not be based on facts that are not in the record. I think that the Chrisman decision does a good job of describing this court's precedent there. So, to be clear, what Jack Coppinger is asking for, really, in this case, is resentencing. And I think that there's two problems, and the court really needs to only address one. On the one hand, there should have been some way, could have been in common review, or some way that counsel for Coppinger, before sentencing, could have been given access to the relevant facts. On the other hand, there could also perhaps be some more general notice that the impact on the straw buyers is going to be a relevant consideration, and so there should be some time to prepare, and as necessary, prepare to present facts that go to that issue. In this case, neither of those happened. Okay, we'll get your rebuttal. We'll hear from the government. May it please the court, my name is Dan Rankin, I represent the government. The record shows that Coppinger and Coppinger's counsel were aware of the damages that they caused in the community where Coppinger lived and where he recruited most of the straw buyers. Coppinger's counsel acknowledged as much during the sentencing, and he said that Coppinger actually apologized for some of the damage, or for the extensive damage that he caused. How many of the straw buyers did Coppinger recruit? Recruit? Right. The whole premise here of the government is he knew these people, he knew the circumstances, which implies that he recruited them. So how many did he recruit versus the mortgage law officers? I can't give you an exact number. Well, give me a range, if you know. I don't know. Coppinger recruited the majority of them, and then he trained Norman and Herzog to recruit others as well. But most of them, again, you can infer from the record, because most of them were from Coppinger's town, and that's one thing that the judge also noted when he was going through the sentencing factors, is that most of these people were from a small community where Coppinger was from, and Coppinger used his relationship with those people to bring them into the conspiracy. And then Coppinger also, those people that he brought in, trusted Coppinger, and they brought in other people. So some of the straw buyers actually recruited other straw buyers. Well, you say in your brief that Coppinger was aware of the circumstances of the straw buyers that he personally recruited. We're not sure how many of that there were, and the impact his offense conduct had on them. Well, obviously he's aware that they're now felons. We get that. But as you can probably tell, I'm really troubled by the district judge making clear to us that he based this sentence, at least in part, upon what was in 33 pre-sentence reports, that neither Coppinger or his counsel or this court have had the opportunity to review. So how can we be confident, no matter what the standard of review is in the propriety of this sentence, when we have no idea whether the conclusions that the district judge drew were adequately corroborated by this body of pre-sentence reports? Some of it is the district judge has presided over all these cases. I mean, this is somewhat like a gang conspiracy case. What, just trust me? Is that the response? It's not just trust me. It's that the district judge has heard and has based this on firsthand knowledge. He's not... They're not in any trial here. This is just strictly sentencing for everybody? There were a few straw buyers that went to trial. I think four went to trial, and they've been convicted but haven't been sentenced. So that was public record, I suppose. But even for that, the effect of Coppinger on their standing in the community and their personal family situation, their lives, that's not going to be in the trial in connection with their guilt, right? No. It's going to be post-trial in connection with whatever arguments are made in the sentencing fair. Their sentencings, yes. The same judge trial? Yes. That's Judge Adams. I'm fascinated why, when the government says, well, he handled all these and we should trust him, why wouldn't you have filed the pre-sentence reports, at least under seal with us, so we could look? Well, we went by the contention that Coppinger's not entitled to the pre-sentence reports. There's confidential information in all his reports. He's not entitled to them. Is he entitled to the information in the pre-sentence reports upon which the district judge relied in sentencing him, as opposed to the information in the reports that the district judge didn't rely upon? I think he's entitled to know that the judge was looking at aggravating circumstances, and some of the aggravating circumstances involved all these straw buyers, and I think he knew that, and that's apparent from the record. What does the Hamad decision say about this? I'm sorry, Judge? What does the Hamad decision say about this? Doesn't it say that the defendant's entitled to know what the district court judge is relying on? From the very beginning of the sentencing, Coppinger indicated that he did understand that there was a lot of damage caused, and he apologized for it. It's not extensive. I mean, it's not like Coppinger knew, okay, he relied on 20 pre-sentence reports of the 33 straw buyers. I'll admit that. It's not extensive. Tell me, let's look at it this way. Let's say it's reversed, and on this ground, the ground of not providing access to the defendant, the information on which the district court's relying. So put the victim, non-victim thing to the side. It's just about . . . it's kind of a Hamad issue. If we reverse in this case, what kind of problems, if any, does it cause in future cases? Well, you make some . . . you could turn sentencings into some pretty extensive hearings where they're going to . . . Tell me how. I mean, I would assume one option is district court judges say, no, I'm not going to use that stuff. I know I know it, but I'm going to focus on the four corners of the PSR and what happened in this plea agreement or this trial or whatever it is, and that seems to cure that. We can trust district court judges to do that. Well, it's a conspiracy case, and in similar type cases, the judge has looked at damage to the community and routinely looks at damage to the community in a gang case, in a Rico gang case. The judge is always going to look at . . . and they do all the time. They'll look and be like, well, look what this gang has done to the community. Look what this gang has done . . . But damage to the community, isn't that distinguishable from the impact on the specific lives and families of co-defendants? It is different, but he also considered . . . the judge considered really three things, three areas of harm caused by Coppinger. To the straw buyers themselves, to the straw buyers' families, and to the overall harm to the community. And how do we know of this 23-month, I think it was, variance, what weight he gave to each of those three? Just from looking at the record and what the judge said. We don't, right? I mean, you know, we know that . . . So the only time this is going to be a problem . . . see if I'm right about this. It seems to me the only time this is going to be a problem is when there is a variance . . . and the district judge says, I'm relying upon something, in this case in PSRs, but they're confidential and I'm not going to give them to you. Is that a fair statement? That doesn't happen too often. How often is that? Has that ever happened in your experience? No. How long have you been doing this? It's almost like you need a lawyer at this point. 14 years. And did you get any medals? Not yet. Well, so what can you tell us about what sort of practical problem we would or might create? Were we to say, look, you say you relied upon information, it wasn't made available to the other side, we still don't have it yet, so do over. Well, I think the reality . . . the judge here acknowledged, okay, I've looked at these PSRs. I've looked at them over the weekend. What you're going to have . . . I don't know how to say this, but what you're going to have is judges are still going to consider the same information. They're just not going to come out and say it. They're just going to . . . they're going to still look at . . . I mean, it's his knowledge. He can't . . . he's . . . he had taken pleas from most of these people already. He had seen that they're not going to be involved in this kind of scheme without Coppinger, and it disturbed him. And I know he didn't . . . you know, he says, I'm not treating you as victims. You know, and he says, I'm treating the banks as the victims. But then he actually says the primary victims. But then he goes on for two pages about the damage that Coppinger's caused to these people. But it's not as victims. It's really, again, the aggravating circumstance of the offense, which he has personal knowledge of. Well, you say that the problem, if we did this as judges, is just stop being forthright, which is obviously not something that we want. This judge should be credited for telling us exactly what he did, if not why. But we're not really the thought police here. We measure judges on what they did and what they say, not what they thought. We don't know what they think. Well, the practical reality, though, too, is then you're going to come back and people are going to start asking for . . . if this does come up. You know, it hasn't come up like the court has made that point. It hasn't come up very often. But if there's co-defendants, they're going to always ask for the PSRs. If there's a case out there saying you're entitled to the co-defendant's PSR, they're going to ask for it, and you're going to start getting into all kinds of . . . Why is that if the district court refuses to rely on it? Because you're going to say there might be something in there that could affect my sentencing. I want to see it. Well, let's assume that that's a problem. I think you make a good point there. Isn't there some . . . if a district judge determines, for whatever reason, that he or she is going to rely upon things in other defendants' PSRs, that they have to come up with some way to advise the defendant, either specifically or at least generally, on what that information is. What's wrong with that? Here, it seems almost . . . the record shows that Coppinger understood that part of what was going on here was the damage caused to the community. He apologized for it. He apologized for it. He talked in the PSR about it. In his own PSR, he made a statement about some of the damage that he caused in the community, not just to the banks and not to restitution or anything else, but to the people that he recruited. This didn't come out of the blue. The first time he heard about it wasn't when Judge Adams started to talk about it during the sentencing. It was an underlying issue throughout. And the record's not . . . it's not extensive, but the PSR has mentioned it. He mentions it himself. It's not like this was something he couldn't respond to. He wasn't surprised by it. This isn't a case where he came in and this was a surprise. And he thought, well, I'm just going to . . . we're not even going to talk about damage to the community or damage to the straw buyers. How do you know it wasn't a surprise? Because his lawyer started off the sentencing talking about, excuse me, the damages that Coppinger caused and apologized for it. And if he starts off the sentencing with that . . . He didn't know. And he's trying to minimize . . . The attorney, and we get into the ineffective assistance of counsel, there's a lot of reasons the attorney would admit to that or talk about that. One of them is possibly he's trying to do a proactive approach and just go, okay, Judge, we understand that Coppinger did all this and recruited all these people. But then to go into the sentencing factors, which he did, which was drug and alcohol abuse, bipolar disorder, and the other sentencing factors that his counsel talked about. I think that the court, if we fashion any kind of a rule here, some court does, you could say if the court's wanting to look at information from the pre-sentence report, they could just take the excerpts out of that on the recital of the facts from each defendant and stick it in. Most of that's not confidential, I would think, unless there's something very sensitive in there. But each person says who recruited them and how they got into the case and all that stuff. It doesn't have to be the whole pre-sentence report because most of the stuff in there is not very relevant anyway. And then are they going to then want to have those people appear as witnesses at the sentencing? Well, they might, yeah. I mean, then the sentencing becomes a whole separate proceeding longer than the trial or longer than the plea in this case. I mean, here this is, again, I think the record, and it's not real extensive, but it does show that Coppinger was aware that this was an issue. Let me just give you an example, and maybe there's a good answer to this. The judge here takes some pains to describe this category, this group of straw-buyer co-defendants, and he says they were unsophisticated, law-abiding, hard-working, decent people. Let's assume that some percentage of them, small or otherwise, when you look at the part of the pre-sentence report that deals with their prior records, that they have several convictions and a few arrests. I'm asking you to assume that, not that that's true. Would you say the judge still was proceeding properly in having drawn the conclusion that I just read to you that does not seem to be supported by the pre-sentence reports, if that be the case here, in some number of these defendants? Not hypothetical, no. So in that case, would you concede that the defense attorney should be permitted the opportunity to say, hey, wait a minute, judge, I heard what you said, and maybe that's true for most of them, but don't forget, we've got a bunch of people that this is their third fraud conviction here. He should be able to make that argument, shouldn't he? Whether, well, okay, yes. Am I hypothetical, which may not be a good one. Okay, so why doesn't that cause the government, even the government, a problem here? Because that really wasn't the case here. I mean... Trust me. It's not just trust me. It's that the... He didn't base it on whether they necessarily... He goes into, yeah, they're hardworking, they're law-abiding, in general, people, but he didn't necessarily base the upward variance on whether they were law-abiding or hardworking people. He based it on, overall, that they were recruited into this thing by Coppinger. And to a certain extent, if they're going to be recruited in this, you know, they're guilty. I mean, they're criminal, you know, they have... You know, they're criminal culpability here on the straw buyers. It's not like they're just out there... Do you do drug cases? I do appeals, so I do drug appeals. And in how many of these drug appeals have the leaders of the conspiracy recruited the runners and the people that own the stash houses and everybody else? Almost all of them. So no different in a white-collar crime, right? I think your time is up. Thank you, Mr. Rank. We appreciate your argument. Mr. Smith, you may have some rebuttal time. So I think that one of the problems here was coming up there on rebuttal. We have to make a lot of assumptions to justify the variance in this case. And that's generally not how sentencing works. A defendant, you know, you don't sort of... They don't have to assume a lot of things against them. There's usually clear reasons that justify a sentence, and part of what this court does is look at those reasons. Say, you know, did you look at proper factors? Is it well-reasoned? And, you know, just sort of as a thought experiment... We gave you the reasons. The question isn't whether we know what the reasons are. We know exactly what they are. We just don't know, for appellate review purposes, whether they're correct. Right. I mean, there's certainly some reasons that appear to be improper because they're extra-record facts. And to sort of come up with an acceptable sentence here, you have to make a lot of assumptions. Well, what's an improper extra-record fact here, assuming that you had known about them and assuming they're true? I would say, for example, you know, what were people's criminal histories? In the process of going through this, I came across one defendant. He's got four DUIs. He violated his bond in this case. I mean, the actual facts in reality are inconsistent with the way the judge is presenting them. But that type of testing didn't happen at the hearing, and there's nothing in the record that makes you think that Mr. Cominter knew about this at the hearing. You can assume he may have because maybe as someone he recruited, you can start getting into a lot of assumptions. But that's not what we do when we review sentences. You shouldn't sort of, you know, there shouldn't be that strict of a burden against. And sort of as a thought experiment, I went through the sentencing transcript and just sort of blacked out the stuff that likely came from the PSRs. And when you do that, there's not much there to support the variance in this case. You know, they talk about the community. But, you know, what a sentencing judge should do is when he says it's a harm to the community, should then say, for example, and then talk about something that's in the record. Talk about some facts that a defendant would have an opportunity to push back against if they weren't true. But here, there's not that. The only things that are there are facts that weren't in the record. One thing I'd like to clarify, there was a trial related to this conspiracy this past summer. That happened after the sentencing in Mr. Coppinger's case. So the facts that came out of that trial, you know, those post-stated the sentencing here, so those were not available. Do you want your client resentenced in a world where that stuff might be available? You know, I agree. It's certainly a concern. But, you know, I think it's Mr. Coppinger's made a decision that he's willing to go back before Judge Adams and face this judge again. And, you know, and this is in some ways beyond the record this case, but, you know, he made a decision not to testify in that case, even though he was called by the straw buyers to testify, to exculpate them. And part of it was his knowledge that he may face Judge Adams again. And so whether that's a good strategy or not, you know, at the end of the day, that was Mr. Coppinger's decision, and I respect that. He's liable to get the same sentence, you realize that? Yes. No, and I think that it's conceivable that the same sentence could happen, and if it were better supported in the record, you know, I can imagine. I think that there are issues, as I said, with using co-conspirators as victims, and I hope that's something that is dealt with more thoroughly if resentencing does happen. And if the sentence is raised, we'll have opposite and effective assistance claims, one on the original and one on the second. How often does that happen? Yeah, I've never seen it. Although I can't imagine thinking you would be ineffective. So good job. Thank you. We see your CJA, so thank you very much for your service to Mr. Coppinger and to the system and to us. We appreciate it, and thank you, Mr. Ranke, as always, for your arguments in the briefs. Case can be submitted. I think that's it, so you can adjourn court, please. This honorable court stands adjourned.